WILMER CUTLER PICKERING
  HALE AND DORR LLP

SONAL N. MEHTA (SBN 222086)
  Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
  David.Gringer@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

ARI HOLTZBLATT (*pro hac vice*)
  Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
  Molly.Jennings@wilmerhale.com
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 663-6000

*Attorneys for Movant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| META PLATFORMS, INC., a Delaware Corporation headquartered in California,<br><br>Moving Party,<br><br>v.<br><br>ALPHA EXPLORATION CO., INC., *d/b/a* Clubhouse, a Delaware Corporation headquartered in California<br><br>Responding Party. | Misc. Case No.  3:22-mc-80237<br><br>Underlying action in United States District Court for the District of Columbia, No. 1:20-cv-03590-JEB<br><br>**META PLATFORMS, INC.'S NOTICE OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Related Case: *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-08570-JD (N.D. Cal.) |

1
**NOTICE OF MOTION**

2
**PLEASE TAKE NOTICE** that Moving Party Meta Platforms, Inc. will and hereby does
3
move the Court to Compel Alpha Exploration Co. Inc., *d/b/a* Clubhouse to Produce Documents
4
pursuant to Rule of Civil Procedure 45. This motion relates to *only* the subpoena served on
5
Clubhouse for the underlying action brought by the Federal Trade Commission currently pending
6
before the United States District Court for the District of Columbia. Meta's subpoena to Clubhouse
7
in the case, *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-08570-JD (N.D. Cal.) and the
8
accompanying letter motion to compel will remain before Judge Donato in the Northern District
9
of California.

10
Meta's Motion To Compel is based on this Notice of Motion and the accompanying
11
Memorandum of Points and Authorities, any matters of which the Court may take judicial notice,
12
and such other additional information or argument Meta may present at or before the hearing on
13
the Motion. Pursuant to L.R. 37-1, Meta met and conferred three times, on March 14, April 7, and
14
April 14. Meta also requested additional meet and confers, which Clubhouse refused. And the
15
parties exchanged many emails and letters. The parties are at an impasse.

16
For the reasons explained in greater detail in the accompanying Memorandum of Points
17
and Authorities, Clubhouse has documents that are relevant to the claims and defenses in the
18
underlying action and Meta has taken reasonable steps to reduce Clubhouse's burden to produce
19
such documents. Meta accordingly requests that the Court grant its Motion to Compel and order
20
Clubhouse to conduct resasonable searches (including a targeted set of custodians) for documents
21
responsive to the three categories Meta seeks discovery on, and to produce the responsive
22
documents it finds.

23
24
25
26
27
-1-
**META'S NOTICE OF MOTION TO COMPEL**
28

Dated:  September 2, 2022

Respectfully submitted,

By: */s/  Sonal N. Mehta*

SONAL N. MEHTA (SBN 222086)
  Sonal.Mehta@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
  David.Gringer@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone:  (212) 230-8800

ARI HOLTZBLATT (*pro hac vice*)
  Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
  Molly.Jennings@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone:  (202) 663-6000

*Attorneys for Movant Meta Platforms, Inc.*

-2-
**META'S NOTICE OF MOTION TO COMPEL**

WILMER CUTLER PICKERING
 HALE AND DORR LLP

SONAL N. MEHTA (SBN 222086)
 Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone:  (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
 David.Gringer@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone:  (212) 230-8800

ARI HOLTZBLATT (*pro hac vice*)
 Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
 Molly.Jennings@wilmerhale.com
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone:  (202) 663-6000

*Attorneys for Movant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| META PLATFORMS, INC., a Delaware Corporation headquartered in California,<br><br>                                Moving Party,<br><br>   v.<br><br>ALPHA EXPLORATION CO., INC., *d/b/a* Clubhouse, a Delaware Corporation headquartered in California<br><br>                              Responding Party. | Misc. Case No.   3:22-mc-80237<br><br>Underlying action in United States District Court for the District of Columbia, No. 1:20-cv-03590-JEB<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL CLUBHOUSE TO PRODUCE DOCUMENTS** |

Meta moves to compel the production of certain documents from non-party Alpha Exploration Co. (*d/b/a* Clubhouse). Meta's motion to compel relates to *only* the subpoena served on Clubhouse for the underlying action brought by the Federal Trade Commission currently pending before the United States District Court for the District of Columbia. Although the language of the requests for production overlap with requests being moved upon in Meta's subpoena to Clubhouse in *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-08570-JD (N.D. Cal.), Meta has moved on that motion by letter brief separately and that motion will remain before Judge Donato in the Northern District of California.

Clubhouse is a new competitor launching only in March 2021.[1] It is an online application where users orally communicate with friends and those with shared interests. Within its first year, Clubhouse went viral, racking up millions of downloads, capturing the attention of millions of users, and raising several millions of dollars.[2] It is important to this case: its rapid and recent entry as a competitor to Meta, followed by its amassing of tens of millions of users contradicts the FTC's allegations that Clubhouse and similar applications do not compete with Meta and that Meta's alleged conduct created "substantial barriers to entry" that "protect Facebook's monopoly position," "eliminate[] nascent rivals" and ensures that "even well-known, sophisticated, and well-financed firms … fail[] to successfully enter the" FTC's putative market. *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590-JEB Dkt. 82 ¶¶ 9, 186. However, instead of working with Meta to produce documents, Clubhouse has engaged in a letter-writing campaign of obfuscation and threats, and it is only after repeated attempts to confer and resolve the issue that Meta must submit this motion and memorandum.

---

[1] *See* Eric Griffith, *What is Clubhouse?*, PCMag (Nov. 18, 2021), https://www.pcmag.com/how-to/what-is-clubhouse-app.

[2] *See* Eric Rosenbaum, *Clubhouse Has 'Millions More On Waitlist' After Android Launch: CEO*, CNBC (May 25, 2021), https://www.cnbc.com/2021/05/25/clubhouse-has-million-more-on-wait-list-after-android-launch-ceo.html (reporting "peak of over 9 million [downloads] in February [2021] … more than 10 million weekly active users … [and] a new round of venture capital valuing the company at $4 billion."

Meta served its subpoena on Clubhouse six months ago. *See* Meta Subpoena to Clubhouse, (Feb. 22, 2022), Gringer Decl. Ex. A. From the start, Meta told Clubhouse that it would work with the company to reduce any burden. *See* Email D. Gringer to T. Falzone (Mar. 8, 2022), Gringer Decl. Ex. B. Since then, Meta has offered to meet and confer eight times, has four times extended the deadline by which Clubhouse was required to respond to Meta's subpoenas, and suggested in-person meetings with counsel for Clubhouse (both the undersigned and Clubhouse's counsel are based in NYC). Meta has also provided many examples of the types of documents it would consider responsive to its requests. In an attempt to work with Clubhouse, Meta has substantially narrowed its subpoena, categorizing a subset of its requests into four "buckets" and telling Clubhouse that conducting a reasonably diligent search for documents and producing any responsive documents it found with regard to each bucket would satisfy all requests falling within that bucket.[3] *See, e.g.*, Ltr. D. Gringer to B. Margo (Apr. 7, 2022), Gringer Decl. Ex. C; Ltr. D. Gringer to B. Margo (Apr. 22, 2022), Gringer Decl. Ex. D; Ltr. D. Gringer to B. Margo (May 18, 2022), Gringer Decl. Ex. E; Ltr. D. Gringer to B. Margo (June 27, 2022), Gringer Decl. Ex. F.

But at every turn, Clubhouse refused to engage with Meta, claiming undue burden—notwithstanding having retained a large, international law firm, and having hundreds of millions in funding and a $4 billion valuation. Clubhouse repeatedly demanded that Meta withdraw the subpoenas in full, insisted that Meta preemptively assume any costs incurred by Clubhouse, and threatened sanctions if Meta did not comply with its demands. *See* Ltr. B. Margo to D. Gringer (Apr. 6, 2022), Gringer Decl. Ex. G; Ltr. B. Margo to D. Gringer (Apr. 15, 2022), Gringer Decl. Ex. H; Ltr. B. Margo to D. Gringer (Apr. 29, 2022), Gringer Decl. Ex. I; Ltr. B. Margo to D. Gringer (May 2, 2022), Gringer Decl. Ex. J. That same law firm has filed motions to compel against non-parties in another antitrust litigation in the district overseeing this case, explaining that

---

[3] One of the four categories (Category 2, regarding Clubhouse's Policies or Practices Surrounding Paying for User Data) involved information specific to allegations made in the *Klein v. Meta Platforms, Inc.* case pending in the North District of California. Because those claims are not made by the FTC, Meta does not move to compel Clubhouse's response to that category here.

-2-
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL CLUBHOUSE TO PRODUCE DOCUMENTS**

such "sharp-elbowed negotiation tactics" are plainly inappropriate. *United States v. Google LLC*, No. 1:20-cv-03010-APM, Dkt. 245 at 10.

After months of delay, Clubhouse finally agreed to search for and produce documents responsive to Meta's four categories. *See* Email B. Margo to D. Gringer (June 3, 2022), Gringer Decl. Ex. K. Three weeks later, Clubhouse made a final take-it-or-leave-it offer, reporting it had identified *only 13 documents*, but refused to produce them immediately and demanded Meta pay Clubhouse tens of thousands of dollars in fees before it produced anything (though Clubhouse has provided no evidence regarding whether the fees are significant or even that they were incurred in complying with the subpoenas). *See* Email B. Margo to S. Hershman (June 28, 2022), Gringer Decl. Ex. L; *cf. Hyundai Motor Am., Inc. v. Pinnacle Grp., LLC*, 2016 WL 6208313, at *2 (C.D. Cal. Apr. 20, 2016) (denying fees where non-party provided "no information concerning its book of business that would enable the Court to find that the … costs it is requesting is a 'significant expense for it.'"). As Clubhouse's own counsel has recognized in other antitrust cases, the scope of Clubhouse's production is obviously deficient and its claimed expenses are no basis to refuse to search for and produce documents. *United States v. Google LLC*, No. 1:20-cv-03010-APM, Dkt. 240 (D.D.C. Oct. 14, 2021) (explaining that the production from Yelp—with a valuation less than half the size of Clubhouse—of a "mere 10,000 documents" in response to subpoenas was obviously insufficient, and the claimed expense of $55,000 to add another custodian was not significant).

The Court should (1) order Clubhouse to produce the responsive documents it has already identified and previously offered to produce; (2) require Clubhouse to describe the searches it has conducted thus far; and (3) require Clubhouse to conduct additional reasonable and targeted searches (including in relevant custodial files) for other documents responsive to three of Meta's four categories. The court should also deny any request for costs as unwarranted and premature.

-3-
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL CLUBHOUSE TO PRODUCE DOCUMENTS**

## I. BACKGROUND

### A. The FTC's Novel Enforcement Action

The FTC brought a sweeping antitrust case against Meta based on a novel and remarkable theory that long-ago acquisitions the FTC reviewed but did not challenge are anticompetitive. The FTC requests an unprecedented order forcing Meta to divest important lines of business years after the FTC cleared Meta to acquire those lines of business.

In order to prove its claim under Section 2 of the Sherman Act, the FTC must prove (1) the existence of a relevant antitrust market; (2) that Meta possesses monopoly power in that market; and (3) that Meta willfully maintained that power through "exclusionary conduct." *FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 12 (D.D.C. 2021) ("*Facebook I*").

The FTC alleges that Meta competes in what the FTC calls the personal social networking services ("PSNS") market. As the Court overseeing the D.D.C. case has recognized, PSNS is an "idiosyncratic[ ]" and "nonintuitive," market. *Facebook I*, 560 F. Supp. 3d at 4, 14, 16-17, 20. It excludes countless competitors that Meta competes vigorously with, such as Clubhouse, and in Meta's view, does not reflect commercial reality.

As for market power, the FTC alleges that Meta has greater than 60% of the PSNS market by relying on data capturing the time users spent on a small selection of apps the FTC also deemed PSNS services. *See* FTC Am. Compl. ¶ 198. And the FTC alleges that network effects and high switching costs prevent other firms from entering the market to compete with Meta. *See id.* ¶ 212.

Since offering a service that many users enjoy is not illegal, the FTC further alleges that Meta engaged in anticompetitive conduct when it acquired Instagram in 2012 and WhatsApp in 2014—even though the FTC itself contemporaneously cleared both of those acquisitions under the Hart-Scott-Rodino Antitrust Improvements Act of 1976. To support its claim, the FTC alleges that third parties view the acquisitions as anticompetitive. *See FTC v. Facebook, Inc.*, 2022 WL 103308, at *1, *12 (D.D.C. Jan. 11, 2022) ("*Facebook II*"); FTC Am. Compl. ¶¶ 97, 124.

Because Meta's apps are free to users, the FTC cannot claim that Meta's acquisitions of Instagram and WhatsApp increased prices, which is the usual method of proving the

-4-

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL CLUBHOUSE
TO PRODUCE DOCUMENTS

anticompetitive effect of an acquisition. *See Facebook II*, 2022 WL 103308, at *12-13. Instead, the FTC has asserted the novel theory—that, but for the acquisitions, Meta and its competitors would have offered products of better quality, including with respect to privacy. *See id.* (noting that, because Meta's services are free, the FTC "has not[] and could not[] allege harm in the archetypal form of increased consumer prices," and instead relied on decreases in innovation and quality as it relates to privacy, data protection, and advertising practices).

The FTC seeks the extraordinary remedy of the divestiture of Instagram and WhatsApp. FTC Am. Compl. § XI(B).

### B.    Meta's Subpoena to Clubhouse

Meta subpoenaed Clubhouse on February 22, 2022. *See* Meta Subpoena to Clubhouse, Gringer Decl., Ex. A. From the start, Meta assured Clubhouse's general counsel that it would work to alleviate any undue burden on Clubhouse. *See* Email D. Gringer to T. Falzone (Mar. 8, 2022), Gringer Decl., Ex. N. But while Meta sought to engage with Clubhouse to discuss priorities and a reasonable narrowing of particular requests by consolidating the subpoena into four "buckets," Clubhouse rejected each proposal and demanded only that Meta withdraw the subpoenas in full or else Clubhouse would "seek appropriate sanctions." *Compare* Ltr. D. Ginger to B. Margo at 2 (Apr. 7, 2022), Gringer Decl. Ex. C, *with* Ltr. B. Margo to D. Gringer at 1-2 (Apr. 15, 2022), Gringer Decl. Ex. H.

Each time Meta rearticulated its proposal, it was met with further obstruction from Clubhouse, which called Meta's "proposal … not at all productive" (Gringer Decl. Ex. H), and refused to meet and confer with Meta, opting to engage only "by written communication," (Gringer Decl. Ex. I). After months of obstinance, Clubhouse finally agreed to produce a total of 13 documents responsive to the four categories it claimed to have been "diligently pursuing," but only if Meta would "confirm that [it] will compensate Clubhouse for its attorneys' fees" totaling at most $15,000. *See* Gringer Decl. Ex. L.

-5-
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL CLUBHOUSE TO PRODUCE DOCUMENTS**

Meta has requested that Clubhouse provide a description of the searches it has run and produce all of the documents it has found without condition. However, Clubhouse has consistently refused to discuss the parameters of its search, and the parties are at impasse.

## II.  DISCOVERY FROM CLUBHOUSE IS WARRANTED

The non-party discovery that Meta seeks from Clubhouse is warranted. *First*, permissible discovery in antitrust cases is uniquely broad because of the nature of antitrust claims. *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 257 F.R.D. 580, 586 (N.D. Cal. 2009); *Markson v. CRST Int'l, Inc.*, 2WL 4027499, at *5 (C.D. Cal. May 14, 2021). The D.D.C. Court overseeing the underlying case has recognized that this important and complex case will require extensive discovery of non-parties such as Clubhouse.[4] And relevant non-parties routinely produce discovery in antitrust cases of similar scope and complexity to this one.  *See, e.g.*, 10/28/21 Status Conf. Tr. 17:7-12, *United States v. Google LLC*, No. 1:20-cv-03010-APM, Dkt. 249 (D.D.C. Oct. 29, 2021) (Microsoft "has produced over 1.2 million documents"); Samsung Position Statement at 7-8, *United States v. Google LLC*, No. 1:20-cv-03010-APM, Dkt. 244 (D.D.C. Oct. 22, 2021) (discussing process to review 1.5 million Samsung documents captured by search terms); Status Report at 1, *FTC v. Qualcomm Inc.*, No. 5:17-cv-00220-LHK, Dkt. 663 (N.D. Cal. Mar. 30, 2018) ("Apple has produced more than 4.1 million documents totaling over 37 million pages").[5]

*Second*, the discovery Meta seeks is highly relevant to defending against the FTC's claims of market power and exclusionary conduct. The FTC claims that Meta has monopoly power in a gerrymandered PSNS market—a term industry participants do not use. According to the FTC, Clubhouse does not compete with Meta in the PSNS market, nor is it a substitute for Meta's

---

[4] See 2/28/2022 Case Mgmt. Conf. Tr. 4:17-21, *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590-JEB, Dkt. 109 (D.D.C. Mar. 8, 2022) ("2/28/2022 FTC v. Meta Case Mgmt. Conf. Tr.") ("[T]here is a lot of third-party discovery that needs to take place[.]"); *id.* at 3:2-23 ("[T]his is a big case, one of the most complex and involved cases that I've had.").

[5] *See also United States v. AT&T Inc.*, 2011 WL 5347178, at *5-7 (D.D.C. Nov. 6, 2011) (denying motion to quash subpoena despite compliance entailing producing roughly 440,000 pages of documents); *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 404 (D.C. Cir. 1984) (vacating order quashing subpoena based on failure to establish that searching more than 900 cubic feet of hard-copy documents would be unduly burdensome, despite noting that scope of request was "extraordinary").

1   services. The FTC excludes countless other obvious competitors, including TikTok, Twitter,
2   YouTube, LinkedIn, and nearly 200 others that have publicly identified Meta as a competitor.
3   Clubhouse's rapid growth also refutes the FTC's claim that Meta's market position is protected by
4   barriers to entry that prevent competition.

5   *Third*, the stakes of this case are significant. For the first time in history, the FTC seeks to
6   divest important lines of business (worth billions of dollars), stemming from acquisitions it
7   previously reviewed and cleared. It has devoted significant resources to the case, conducting an
8   18-month pre-complaint investigation, in which it received over 12 million pages of documents
9   from Meta, took testimony from 18 senior Meta employees (totaling 150 hours), interviewed or
10  sought to interview 85 non-parties, and collected additional documents and testimony from non-
11  parties. It has expanded on those efforts since the lawsuit began, serving expansive discovery on
12  Meta, requiring Meta to review over four million documents from roughly one hundred custodians.
13  And it has subpoenaed many non-parties, including Clubhouse, seeking the same categories of
14  documents that are at issue in this motion, and many more.

15  Clubhouse's "[non]-party status does not confer [on it] a right to obfuscation or obstinacy."
16  *Apple, Inc. v. Samsung Elecs. Co.*, 2013 WL 1942163, at *1 (N.D. Cal. May 9, 2013). As a non-
17  party, Clubhouse is expected to cooperate in discovery and produce responsive documents. *Id.*;
18  *see also In re Apple iPhone Antitrust Litig.*, 2021 WL 718650, at *1-3 (N.D. Cal. Feb. 24, 2021).
19  Clubhouse is also obligated to conduct reasonable searches and describe the custodians and search
20  terms it runs (if any). *See Apple, Inc.*, 2013 WL 1942163, at *3 (requiring disclosure of custodians
21  and search terms to "uncover[] sufficiency of [non-party's] production"); *Rogers v. Giurbino*, 288
22  F.R.D. 469, 485 (S.D. Cal. 2012) (requiring party to "state with sufficient specificity" the
23  reasonable inquiry conducted).

24  **III.   META'S SUBPOENA SEEKS CRITICAL RELEVANT INFORMATION FROM CLUBHOUSE**

25  The documents Meta seeks are highly relevant. Clubhouse agreed to search for and produce
26  documents responsive to the four categories in Meta's proposal (described below). The Court
27  should enforce that agreement with respect to there of those categories because Clubhouse's rapid

28

-7-

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL CLUBHOUSE
TO PRODUCE DOCUMENTS**

entry as an important competitor to Meta is relevant to demonstrating that the FTC's market definition—which excludes Clubhouse and companies like it—is not grounded in commercial reality.

*Category 1: Competitive Landscape* (RFP Nos. 2, 5, 15)

The first category seeks documents regarding Clubhouse's views on competition and comparisons between Clubhouse's products and features that compete with Meta, which are certainly relevant to this antitrust case. Clubhouse allows its users to connect and broadcast content via live audio rooms, to message each other directly, and check in with friends who are online, and it generally serves as a tool for users and their friends to connect and share their interests.[6] Clubhouse's views on competition and the competitive landscape are thus highly relevant to the FTC's allegations about competition and purported barriers to entry. As the Supreme Court explained in *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962), the "boundaries" of an antitrust market may be determined by examining" a set of "practical indicia including" (among others) "industry or public recognition." As a result, courts "regularly take account of industry participants' perspectives on who their competitors are in order to shed light on the interchangeability of the products they offer." *Delco LLC v. Giant of Md., LLC*, 2007 WL 3307018, at *17 (D.N.J. Nov. 8, 2007).[7] And courts often compel such non-party discovery on market definition. *See In re Apple iPhone Antitrust Litig.*, 2021 WL 718650, at *1-3 (N.D. Cal. Feb. 24,

---

[6] *Introducing Backchannel, Clubhouse's New Messaging System*, CLUBHOUSE (January 14, 2021), https://blog.clubhouse.com/introducing-backchannel (direct messaging); *Say Hello to Wave*, CLUBHOUSE (Sept. 23, 2021), https://blog.clubhouse.com/wave-clubhouse-new-feature (connect with friends).

[7] *See also United States v. Cont'l Can Co.*, 378 U.S. 441, 454-55 & n.7 (1964) (reciting evidence from non-party competitors regarding market definition); *FTC v. Thomas Jefferson Univ.*, 505 F. Supp. 3d 522, 536-37 (E.D. Pa. 2020) (citing evidence from several industry participants in market-definition discussion); *United States v. Oracle Corp.*, 331 F. Supp. 2d 1098, 1152 (N.D. Cal. 2004) (citing internal email from third-party competitor's CEO to support point regarding market definition); *United States v. Sungard Data Sys., Inc.*, 172 F. Supp. 2d 172, 183 (D.D.C. 2001) (rejecting government's market definition, citing "conflicting evidence relating to customer perceptions and practices"); *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 995, 1020 (N.D. Cal. 2021) (citing testimony from various non-party industry participants), appeals pending, No. 21-16506 (9th Cir. filed Sept. 13, 2021) & No. 21-16695 (9th Cir. filed Oct. 14, 2021).

2021) (compelling discovery relevant to market definition); *AT&T*, 2011 WL 5347178, at *3-4, *7 (ordering discovery from non-party competitor relating to market definition).[8] The courts in the *FTC* and *Klein* actions have likewise recognized that the FTC's and private plaintiffs' market definitions—particularly in these cases—puts non-party discovery about industry views of competition squarely at issue. *See Klein v. Facebook, Inc.*, 2022 WL 141561, at *7, *13 (N.D. Cal. Jan. 14, 2022) ("[S]tatements by companies explaining which products they see as competitors for their own products are highly probative."); *see id.* at *8 (discussing third-party evidence's role in a market definition precedent).

   Notwithstanding the central relevance of this information, Clubhouse has refused to conduct any custodial searches, and has produced just two reports, relating to competition, even though it has conceded it competes with Facebook, Instagram, and many companies that the FTC says are not within the ambit of its PSNS market.. Given Clubhouse's self-proclaimed "massive store of documents," its explosive growth, and its view of Meta as a competitor, it is inconceivable that only two responsive documents exist. And Clubhouse's refusal to conduct any searches in custodial files that are likely to have responsive documents is not justified. *See* Ltr. Ben Margo to David Gringer at 3 (Apr. 6, 2022), Gringer Decl. Ex. G. Nonparties in antitrust cases of similar scope and complexity routinely conduct custodial searches at a much larger scale than Meta is seeking here, and courts routinely require non-parties to conduct those searches. *See supra* p. 6; *see also, e.g., V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 367 (D. Nev. 2019) (compelling non-party individual in antitrust case to conduct custodial email searches); *In re EpiPen Mktg., Sales Practice & Antitrust Litig.*, 2018 WL 3240981, at *3 (D. Kan. July 3, 2018) (ordering production of emails that might "reveal direct internal communications not found elsewhere"); *Tera II, LLC v. Rice Drilling D, LLC*, 2022 WL 1114943, at X (S.D. Ohio Apr. 14, 2022) (compelling non-party to perform custodial search); *Aquastar Pool Prods., Inc. v. Paramount Pool & Spa Sys.*, 2019 WL

---

[8] *FTC v. Thomas Jefferson Univ.*, 2020 WL 3034809, at *1-3 (E.D. Pa. June 5, 2020) (similar); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 2020 WL 5370577, at *3-4 (D. Mass. Sept. 8, 2020) (similar).

-9-

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL CLUBHOUSE TO PRODUCE DOCUMENTS**

250429 at *3 (D. Ariz. Jan. 17, 2019) (same); *Sasol N.A., Inc. v. Kan. State Inst. for Commercialization*, 2014 WL 3894357, at *6 (D. Kan. Aug. 8, 2014) (same).

In addition to refusing to conduct standard custodial searches, Clubhouse refuses to describe the search it has performed. This is improper. *Apple, Inc.*, 2013 WL 1942163, at *3 (requiring cooperation over custodians and search terms to "uncover[] sufficiency of [non-party's] production"). Nor is this category of requests burdensome—it seeks ordinary business communications and documents discussing the competitive landscape and product features—and it is plainly relevant. Given its relevance, Meta requests the Court compel Clubhouse to produce the documents it has found and to conduct targeted custodial searches of employees involved in competitive decision-making for documents responsive to this category.

*Category 3: Privacy/Data Collection Policies and Practices* (RFP No. 10)

Meta sought Clubhouse's privacy policies (Clubhouse produced nine, comprising nine of the 13 documents produced), and documents regarding its strategic approach to implementing those policies. When Meta requested that Clubhouse search for and produce documents regarding its privacy practices, Clubhouse equivocated, refusing to conduct additional searches unless "Meta will [] pay for any resulting costs." *See* Email B. Margo to S. Hershman (July 21, 2022), Gringer Decl. Ex. M. The information Meta seeks addresses a premise of the FTC's other far-fetched theory of competitive injury:  that Meta's "acquisition and control of Instagram [and WhatsApp] … deprive[d] users of the benefits of competition from an independent [competitor]" that would create a "check on Facebook['s] [] treatment of and level of service offered to users, including … [the] level of privacy." FTC Dkt. 82 ¶¶ 105, 127.

Documents regarding Clubhouse's privacy policies and practices and views on whether its privacy practices create a competitive advantage relate to Meta's defense—they are pertinent to testing the FTC's theories that competition drives improved privacy and that Meta's privacy policies and practices are below competitive levels. In light of the FTC's novel attempt to use reduction in privacy as a proxy for competitive harm in lieu of increased prices, these documents are no different than "documents relating to price, costs, and customers" that are "at the heart of

… any … [ordinary] antitrust proceeding," *Quadrozzi v. City of New York*, 127 F.R.D. 63, 75 (S.D.N.Y. 1989), and that are routinely required to be produced by non-parties. *See, e.g., In re Apple iPhone Antitrust Litig.*, 2021 WL 718650, at *1-*3 (N.D. Cal. Feb. 24, 2021) (compelling non-party to produce information relating to price, costs, and customers, among other things, since such information is relevant to "market definition" and the "effects of competition."). Clubhouse's documents relating to these subjects are likely to be especially relevant in light of its rapid growth, and in the face of public reporting accusing the company of inadequately protecting user data.[9]

The Court should compel Clubhouse to search for additional documents relating to its privacy practices and policies and to produce responsive documents it finds.

*Category 4: Time Spent/User Engagement Data* (RFP Nos. 3, 4)

Meta seeks user engagement metrics that Clubhouse tracks to rebut the FTC's market-definition and market-power theories and calculations. The FTC seeks to calculate market share using those metrics. *See* FTC Dkt. 82 ¶ 190. Clubhouse has said it tracks Daily and Monthly Active User counts ("DAU" and "MAU") and produced this data. Meta asked repeatedly if Clubhouse tracked any other user engagement metrics (e.g., time spent using the app). While DAU and MAU are metrics that Meta sought, they do not sufficiently respond to its requests for other engagement metrics that may be more detailed allowing Meta to assess how Clubhouse competes for a user's time and attention.  And it appears that Clubhouse may track at least time spent data.[10] Yet, Clubhouse refused to respond. User engagement data is relevant because the FTC claims that Meta's alleged monopoly captured, and allowed it to unfairly profit off of, users' time and

---

[9]    *See* Barry Collins, *Clubhouse: The Hot New Social Network Has Big Privacy Problems*, Forbes (Feb. 10, 2021), https://www.forbes.com/sites/barrycollins/2021/02/10/clubhouse-the-hot-new-social-network-has-big-privacy-problems/?sh=2f24321ce4c3; Sara Morrison, *You've Been Invited To Clubhouse. Your Privacy Hasn't*, Vox (Feb. 22, 2021), https://www.vox.com/recode/22278601/clubhouse-invite-privacy-contacts-app ("Clubhouse has millions of users, and privacy issues are starting to emerge … including a recent incident in which chats on the closed platform were streamed to a third-party website."); (Cable et al., *Clubhouse in China: Is the Data Safe?*, STANFORD INTERNET OBSERVATORY (Feb. 12, 2021), https://cyber.fsi.stanford.edu/io/news/clubhouse-china.

[10] Rosenbaum, *supra* note 2 ("Clubhouse reports … people are spending over an hour a day on the app.").

-11-

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL CLUBHOUSE TO PRODUCE DOCUMENTS**

attention. *See, e.g.*, FTC Dkt. 82 ¶ 60 ("a competitor could offer an advertisement-free business model, [which Clubhouse does,[11] and] which could undermine Facebook's ability to monetize user attention."). If Clubhouse does not track other engagement metrics, it must so state; otherwise, this Court should order Clubhouse to produce responsive data.

### IV. CLUBHOUSE IS NOT ENTITLED TO FEES

Clubhouse's demand that it be compensated for unspecified and unsupported costs before producing documents is wrong. Cost-shifting can only be appropriate in limited circumstances after a party has complied with a subpoena, after they have demonstrated that the expenses incurred were "significant," and after the party seeking costs has demonstrated that the requested fees are reasonable. Fed. R. Civ. P. 45(d)(2(B)(ii), advisory committee notes to 1991 amendments (preference "to leave uncertain costs to be determined after the materials have been produced"). Clubhouse has not yet complied with the subpoena. Further, it is Clubhouse's burden to demonstrate that "all of their requested attorney's fees are reasonable," and that those "significant expenses result[ed] from compliance." *See United States v. McGraw-Hill Cos., Inc.*, 302 F.R.D. 532, 536-37 (C.D. Cal. 2014) ("[Unnecessary or unduly expensive services do not 'result from compliance.'"). Given its minimal productions to date, Clubhouse does not appear to have incurred significant costs, and the amount Clubhouse is demanding as compensation does not appear to have been incurred in complying with the subpoena, considering the comparative focus placed on resisting compliance through a letter-writing campaign. Furthermore, Clubhouse's resources render insignificant any costs incurred from compliance thus far. *See Hyundai Motor Am., Inc. v. Pinnacle Grp., LLC*, 2016 WL 6208313, at *2 (C.D. Cal. Apr. 20, 2016) ("the Court has no basis for finding that [non-party] has incurred 'significant expense' … [for] the $12,087.70 in costs it is requesting."). And regardless, Clubhouse's demands to date are premature. The Court should not shift Clubhouse's costs to Meta.

---

[11] Steve Weiss, *Why Marketers Should Be Paying Attention To Clubhouse*, FORBES (Apr. 15, 2021), https://www.forbes.com/sites/forbesagencycouncil/2021/04/15/why-marketers-should-be-paying-attention-to-clubhouse/?sh=1b28cb9a7b1c ("There is no paid advertising on Clubhouse.").

-12-

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL CLUBHOUSE TO PRODUCE DOCUMENTS**

## CONCLUSION

Clubhouse's obstinacy should not be rewarded. The Court should compel Clubhouse to conduct reasonable searches (including a targeted set of custodians) for documents responsive to Categories 1, 3, and 4 Meta seeks discovery on, and the Court should compel Clubhouse to produce the responsive documents it finds.

| | | |
|---|---|---|
| 1 | Dated:  September 2, 2022 | Respectfully submitted, |
| 2 | | By: /s/  Sonal N. Mehta |
| 3 | | SONAL N. MEHTA (SBN 222086) |
| 4 | |   Sonal.Mehta@wilmerhale.com<br>WILMER CUTLER PICKERING HALE |
| 5 | | AND DORR LLP<br>2600 El Camino Real, Suite 400 |
| 6 | | Palo Alto, California 94306<br>Telephone: (650) 858-6000 |
| 7 | | |
| 8 | | DAVID Z. GRINGER (*pro hac vice*)<br>  David.Gringer@wilmerhale.com |
| 9 | | WILMER CUTLER PICKERING HALE<br>AND DORR LLP |
| 10 | | 7 World Trade Center<br>250 Greenwich Street |
| 11 | | New York, New York 10007<br>Telephone:  (212) 230-8800 |
| 12 | | |
| 13 | | ARI HOLTZBLATT (*pro hac vice*)<br>  Ari.Holtzblatt@wilmerhale.com |
| 14 | | MOLLY M. JENNINGS (*pro hac vice*)<br>  Molly.Jennings@wilmerhale.com |
| 15 | | WILMER CUTLER PICKERING HALE<br>AND DORR LLP |
| 16 | | 1875 Pennsylvania Ave NW |
| 17 | | Washington, DC 20006<br>Telephone:  (202) 663-6000 |
| 18 | | |
| 19 | | *Attorneys for Movant Meta Platforms, Inc.* |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

-14-
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL CLUBHOUSE TO PRODUCE DOCUMENTS**